**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FREDERICK D. PRYOR, IV, | |
| Plaintiff | CIVIL ACTION NO. 3:24-CV-1907 |
| v. | (MEHALCHICK, J.) |
| DR. TEJADA, *et al*., | |
| Defendants. | |

**MEMORANDUM**

After his previous complaint was dismissed, plaintiff Frederick Pryor filed an amended complaint alleging that a dentist and a non-medical officer at SCI-Rockview were deliberately indifferent to his need for dental care. Defendants filed a motion to dismiss the complaint, which the Court converted to a motion for summary judgment because it relies in part on matters extrinsic to the pleadings. Because the record indicates that Pryor did not exhaust administrative remedies as to his claim against defendant Sgt. Hunter, but may have done so as to defendant Dr. Tejada, the Court will grant the motion in part and the case will proceed on an Eighth Amendment claim against Dr. Tejada.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Pryor initially filed a lawsuit in the Western District of Pennsylvania complaining of inadequate dental care and other incidents at SCI-Pine Grove and SCI-Rockview. (Doc. 1). The court in that district ordered that the claims related to SCI-Rockview be transferred to this district. *See* (Doc. 5).[1] The undersigned granted Defendants' motion for judgment on the

---

[1] Pryor now proceeds in the Western District of Pennsylvania on his claims related to SCI-Pine Grove. In a report and recommendation recently issued in that case, Magistrate
*(footnote continued on next page)*

pleadings as to the SCI-Rockview claims, but permitted Pryor to file an amended complaint. (Doc. 16).

The amended complaint (Doc. 37) alleges as follows: At some point in 2022, at SCI-Pine Grove, Pryor underwent a surgery to remove teeth, which left "a gaping hole in his gums." After the surgery, Pryor was transferred to SCI-Rockview, where he was initially housed in the Restricted Housing Unit ("RHU"). Pryor allegedly made multiple sick calls from the RHU on July 27, seeking dental care. He alleges that defendant Dr. Tejada "attempted to see" him on August 2, but defendant Sgt. Hunter told Tejada that Pryor "refused to be seen." Between July and September, Pryor spoke to Hunter twice about an urgent need for dental care, but Hunter allegedly told Pryor that because Pryor "was new here[, Hunter] didn't give a damn about [Pryor's] pain and he wasn't going to call medical." Around this time, Pryor allegedly filed "grievances for his dental issues not being treated and for the pain he was suffering."

Upon his release from the RHU, Pryor filed additional sick calls and was ultimately seen by Dr. Tejada in November 2022. After performing x-rays and examining Pryor's gums, Tejada allegedly "refuse[d] to give [Pryor] anything for the pain he was experiencing," and told Pryor he would be reevaluated later. Pryor's grievances were denied on appeal, and he was placed on a waiting list to be seen in March 2023, but that appointment allegedly "never occurred." He allegedly made sick calls on March 20 and April 5, 2023, which went

---

Judge Maureen P. Kelly found that due to a docketing error, several pages of Pryor's original complaint had not been considered, and there are additional claims that "should be transferred" to this district. *See Pryor v. Bureau of Health Care Services*, No. 2:23-CV-01791-RJC-MPK (Jan. 15, 2026). The Clerk of Court for this district was advised of the error. *See* (Doc. 42). That complaint is no longer the operative complaint in this case, and to date, no additional claims have been transferred from the Western District of Pennsylvania.

unanswered. He alleges that he ultimately suffered "a gaping hole in his gums for the better part of a year," causing severe pain. In addition to Eighth Amendment claims against the two defendants, Pryor asserts what he describes as a "*Monell* claim [based on] a duty to follow [Department of Corrections] policy which neither defendant did."

Defendants filed a motion to dismiss the amended complaint, arguing that their own evidence showed that Pryor had not exhausted administrative remedies, and that the complaint did not plausibly state a *Monell* claim. The Court converted the motion to a motion for summary judgment and ordered Pryor to respond accordingly. *See* Fed. R. Civ. P. 12(d); (Doc. 38, Doc. 40). The motion is now ripe for resolution.[2]

## II.    LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-

---

[2] Pryor did not meet the initial deadline to respond to this motion, and defendants requested that he be ordered to show cause why the case should not be dismissed for his failure to prosecute it. *See* (Doc. 41). Because the record does not clearly indicate that Pryor intended to delay or abandon this case, and his amended complaint may contain a meritorious claim, that motion will be denied. *See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) (listing factors to consider in assessing dismissal for failure to prosecute).

The document that Pryor ultimately filed as his response is styled as a "Motion for the Dismissal of Summary Judgment." *See* (Doc. 45). To the extent Pryor intended to file any further response, the time to do so has passed.

moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife*

4

*Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III.    MATERIAL FACTS

The Pennsylvania Department of Corrections ("DOC") provides a three-part procedure for inmate grievances: initial review by a Grievance Officer, appeal to the Facility Manager, and final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See* (Doc. 39-1 at 9-43) (DC-ADM 004). The parties do not dispute whether any grievance was properly exhausted; the issue is whether the exhausted grievances sufficiently alerted the defendants to the claims in this case.

Pryor exhausted two grievances that are potentially germane to this case. First, in Grievance No. 987966, dated June 4, 2022, he complained about "the deliberate indifference [he] experienced at the hands of the [SCI-Pine Grove] Dental Staff[,] namely Dr. Hazlet & Kathy Smith." He alleged that he was "forced" to have his tooth removed, was being denied a "partial replacement" of his teeth that he had been promised, and had yet to be "reviewed" following surgery. Although the record indicates that this appeal was fully exhausted (Doc. 39-1 at 45), only the initial grievance appears in the summary judgment record. *See* (Doc. 39-1 at 64).

Next, Pryor filed Grievance No. 990799, dated July 25, 2022, against "Numerous Unknown Med Dispensary Staff." Pryor complained that at SCI-Pine Grove between July 10 and July 16, he had been prescribed "a bottle of Colgate Perox[y]l to help keep the hole in my gums clean and maybe even close the hole." Upon arrival at SCI-Rockview, he was not permitted to have the bottle, and did not receive the medication in any form. He complained that he was having pain in his gums "on a sliding basis," and requested that the respondent "send copies" of his prior grievance from SCI-Pine Grove. (Doc. 39-1 at 63). On August 11, 2022, the Grievance Officer denied the Peroxyl grievance, finding as follows:

> This Grievance Officer reviewed your medical chart which showed you were prescribed [Peroxyl] by Dr. Hazlet to start 7/8/2022 and end 7/22/2022. You were not provided the aforementioned medication based on the medication ending on 7/22/2022. You claim that you are having pain in your gums but on 8/2/2022 the Dentist attempted to see you but you refused to be seen. You are encouraged to place a sick call to Dental if you are continuing to have any dental concerns[.]

(Doc. 39-1 at 62). On appeal, Pryor argued that there was a "lack of evidence" to support the finding that he refused an appointment. He further alleged that the Peroxyl did not treat his pain or "close the hole in [his] gums," and had been prescribed as a pretext "for Pine Grove to be able to say I was seen." This appeal was denied on the following grounds:

> A review of the information provided shows this grievance was properly addressed. Your prescription for Peroxyl expired. It is your responsibility to send a sick call for renewal and to be seen for any dental concerns. A review shows you provide no information or evidence to contradict the information presented by the grievance officer.

(Doc. 39-1 at 60). The record does not include Pryor's appeal to SOIGA, but SOIGA's response affirmed the prior decision:

> A review of the record was conducted . . . regarding your concern of not being provided proper medical care. Your medical record was reviewed, and it was determined that the medical care provided was reasonable and appropriate,

6

including what the grievance is about . . . No evidence of wrongdoing was identified.

*See* (Doc. 39-1 at 58-59).

## IV.    DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA generally requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Therefore, exhaustion within the DOC requires appeal to SOIGA, the third and final step of the process. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). To exhaust remedies on a particular issue, the grievance in question must "alert prison officials to [the] problem," but need not "provide personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

By this standard, Pryor did not exhaust available remedies as to his claim that Sgt. Hunter subverted his efforts to seek medical care. Pryor's previous grievances about specific aspects of his dental care do not serve to exhaust a later claim that is only "generally related to the same subject matter."[3] *See Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *4 (3d

---

[3] Although Pryor appears to consider the litigation of his Peroxyl-specific grievance as encompassing all his dental complaints about SCI-Rockview, the record does not support that interpretation. He alleged in the initial grievance that he was in pain, but he did not claim that his sick calls were ignored. On appeal, he vaguely argued that there was a "lack of evidence" for the finding that he had refused an appointment, but he made no allegation against Sgt. Hunter, and neither the Facility Manager nor SOIGA addressed this comment on the merits.

Cir. July 25, 2024). Put differently, Pryor's complaints about surgery aftercare and the denial of Peroxyl would not have "alert[ed] prison officials to a problem" with anything Sgt. Hunter, a non-medical officer, was allegedly doing in the SCI-Rockview RHU. *Williams*, 482 F.3d at 640.

The claim against Dr. Tejada presents a different issue. Even if not properly raised in the original grievance(s), a claim may be deemed exhausted if the relevant allegations were "fully examined on the merits" during the appeal process. *See Rinaldi v. United States*, 904 F.3d 257, 271 (3d Cir. 2018) (quoting *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)). Here, Pryor argues that through his grievance appeals, he was ordered to be "added to the waiting list" to be seen, that Dr. Tejada was aware of this alleged need for ongoing care, and that Dr. Tejada "ignored" his requests when these appointment(s) were not fulfilled.

Since Pryor's appeals from Grievance No. 987966 are not in the record, it is unclear whether Pryor's requests for care were addressed on the merits in a manner that would permit a claim against Dr. Tejada.[4] Given that this grievance alleged an ongoing denial of medical "review" after his surgery, it is entirely plausible that the appeal responses could have addressed the question of what care Pryor was entitled to in the future. Defendants argue that Pryor needed to follow proper procedure by naming Dr. Tejada in a new grievance before filing suit, but his remedies could still be deemed exhausted if the appeal responses considered

---

[4] The timeline in the record potentially supports Pryor's allegations that at least one appointment he was allegedly denied at SCI-Rockview had been previously addressed through Grievance No. 987966. Although initially filed at SCI-Pine Grove, the grievance was marked as "received" on July 7, 2022, and Pryor was transferred to SCI-Rockview at some point between July 16 and July 25. Thus, if he had been granted any additional access to dental care based on allegations in his grievance appeals, it appears that this care would have been scheduled at SCI-Rockview.

8

and resolved whether Pryor was entitled to post-surgery care that he now claims he was denied. *See Rinaldi*, 904 F.3d at 272 ("when the prison . . . mak[es] clear with its merits decision what the inevitable result would be of a re-initiated claim," the purpose of exhaustion is satisfied); *Lee v. Corizon Health, Inc.*, No. 1:16-CV-02154, 2020 WL 4003603, at *3 (M.D. Pa. July 15, 2020). Ultimately, because it is the moving defendants' burden to prove Pryor's failure to exhaust administrative remedies, *see Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002), and their motion does not set forth evidence sufficient to do so, the motion must be denied as to Dr. Tejada.

Finally, Pryor's *Monell* claim will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). As explained in addressing Pryor's previous complaint, *Monell* liability applies to municipal entities and private entities acting under color of state law, not the state or its agencies. *See* (Doc. 33 at 6); *Johnson v. Stempler*, 373 F. App'x 151, 153 n.1 (3d Cir. 2010). Even if these two individuals could be appropriate defendants for such a claim, Pryor has not plausibly alleged that any constitutional violations arose from a municipal "policy or custom"; to the contrary, he alleges that they were caused by the individual defendants' failure to follow DOC policies.

## V.    CONCLUSION

For the foregoing reasons, Pryor's *Monell* claim will be dismissed, summary judgment will be granted as to Sgt. Hunter, and the case will proceed to discovery against Dr. Tejada. An appropriate order follows.

**Dated: February 25, 2026**                    *s/ Karoline Mehalchick*
                                                 **KAROLINE MEHALCHICK**
                                                 **United States District Judge**